50

Russell & Co., Sucrs., *S. en C.*, Plaintiff and Appellant, *v.* Manuel V. Domenech, etc., Defendant and Appellee.

No. 7028. Argued April 3, 1936.—Decided May 27, 1936.

*R. Castro Fernández* and *J. López Baralt* for appellant. *B. Fernández García, Attorney General,* and *R. Cordovés Arana* for appellee.

Mr. Justice Córdova Dávila delivered the opinion of the Court.

Some time in the month of February, 1932, the plaintiff imported into this island a certain apparatus known as a "gyrotiller", paying to the Treasurer of Puerto Rico a tax of 2 per cent on the price or value of said apparatus in accordance with Section 62 of the Internal Revenue Law of Puerto Rico, as amended by Act No. 17, 1927. Subsequently the defendant classified the referred apparatus as a tractor and assessed on the plaintiff an additional tax of 13 per

cent on the amount of $22,462.84, selling price in Puerto Rico of the apparatus in question. In short, putting together both taxes, the plaintiff satisfied the 15 per cent on the selling price that is provided in paragraph 8 of Section 16 of the Internal Revenue Law of Puerto Rico, as amended by Act No. 83 of 1931. The tax, which amounted to $3,562.69, including surcharges and interests, was paid under protest by the plaintiff on the 14th of July, 1933.

In the months of July and August of the same year the plaintiff imported two additional apparatuses identical to the first, for which it paid the tax prescribed in the legal provision that we have just cited.

With these facts as a basis and alleging further that the apparatuses imported had been unlawfully, unjustly and arbitrarily classified by the defendant as tractors, Russell & Co., Sucrs., S. en C., brought the present action, requesting the refund of the sums paid under protest, amounting to the sum of $7,625.34, plus legal interest from the filing of the complaint.

The defendant filed a demurrer to this complaint on the ground that the same did not state facts sufficient to constitute a cause of action. The lower court sustained said demurrer, and granted the plaintiff a term of ten days, which was not taken advantage of, to amend its allegations. The lower court, on petition of the defendant, entered judgment dismissing the complaint and taxing costs on the losing party.

It is averred that the court erred in deciding that the "gyrotiller" is a motor vehicle and on entering final judgment dismissing the complaint, with imposition of costs to the plaintiff.

The issue raised by the appellant is limited to determining if the apparatuses described in the complaint are subject only to the tax of 2 per cent prescribed by Section 62 of the Internal Revenue Law, as it was amended by Act No. 17 of 1927, or if on the contrary they are subject to the tax prescribed by paragraph 8 of Section 16 of the Internal

Revenue Law of Puerto Rico as it was amended by Act No. 83 of 1931.

The plaintiff alleges that one of the appliances imported is a completely automatic mechanical plow that in one operation breaks, turns and pulverizes the soil, prepares the ridges and the furrows and leaves the ground ready for planting: that it has two cylindrical discs to each of which six rotating knives or blades are bolted, which discs turn as the machine moves forward, breaking and turning the soil; that it also has two ordinary plows for making the furrows; that said apparatus has a Diesel engine that transmits power to the said discs and generates at the same time the propelling force; that it has two lateral sets of pontoon wheels and one of steel in the center of the front part of the machine; that it has no traction bars, hooks or hauling apparatus or fly wheel where it may be possible to connect a belt in order to transmit power to another body; that it has never been used and advertised as a tractor; that it has a greater weight than the heaviest tractor and that it moves at a less speed than tractors; that the clutch which controls the wheels is inadequate for the transmission of all the power developed by the motor to the wheels; and that for the purpose of the United States customs this apparatus is classified as an agricultural implement.

They imported also two other apparatuses of the same kind although with the difference of being of a style much lighter and of a lower cost than the one described.

The lower court in a careful and reasoned opinion decided that although the apparatus that is described in the complaint is not strictly a tractor, although resembling it very much, it could be considered as a motor vehicle subject to the tax collected by the Treasurer, in accordance with paragraph eight of Section 16 of the law above cited, that literally says:

"8. *Motor vehicles, launches and boats.*—On every motor vehicle, including automobiles, autocars, trucks, tractors, trailers, motorcycles

(by whatever name known), chassis, motors, bodies, batteries, inner tubes, or pneumatic tires for such motor vehicles, launches with or without mounted motors, motors for such launches, including motors for exterior mountings, sold, transferred, manufactured or used in, or introduced into Porto Rico, a tax of ten (10) per cent on the selling price in Porto Rico; *Provided,* That on the sale, transfer, manufacture, or use in or introduction into Porto Rico, of motor vehicles or motor launches or boats as described in this section, the selling price of which in Porto Rico exceeds $1,500 and does not exceed $2,000, the tax shall be 12½ percent on the selling price, and on the sale, transfer, manufacture or use in or introduction into Porto Rico, of motor vehicles, automobiles and trucks, as described in this section, the selling price of which in Porto Rico exceeds $2,000 and on solid tires for trucks and other motor vehicles sold, used, transferred or manufactured in, or introduced into Porto Rico, the tax shall be fifteen (15) percent on the selling price; *Provided further,* That persons not resident of Puerto Rico, using their own automobiles for personal use only, shall be exempt from payment of the tax prescribed by this Act for such period as they shall use the special license of the Commissioner of the Interior. On the expiration of that period or upon acquiring the regular license of the said Commissioner or before, if the automobile is devoted to purposes other than above mentioned the internal revenue tax shall be paid.''

From the opinion of the lower court we copy the following:

''A tractor is understood to be a machine that produces traction. This definition, nervertheless, is very vague, as any number of entirely different apparatus from those generally known as tractors can be so called. Any mechanism that. pulls an object moving or hauling it, would be within this definition, a tractor. And we know it is not so. The study of the word traction in *Enciclopedia Universal Ilustrada,* edited by Espassa-Calpe, Vol. 63, pages 232 and 233, contains, in our judgment, interesting dissertations on the subject we desire to cons'der, wh'ch in a way clear up the difficulties that come to our attention in this matter.

''Among them we judge of importance those that we copy as follows:

'' 'Sometimes travelers and merchandise are transported in the same vehicle in which the motor is located, that is to say, that the vehicles constitutes a unit that by itself alone is sufficient for its own

54

needs, for it carries within itself the active element, constituted by the motor; the inactive, formed by the load and all the intermediate elements, as transmissions, and the accessories, as the cooling apparatus, brakes, etc. To this group belongs the innumerable trucks . . . .

" 'In other cases the motor is in a separate vehicle by itself and the merchandise and passengers are transported in vehicles hauled apart, or drawn by it. This manner of transportation has given rise to the creation of some special automotor vehicles that receive the name of tractors, in which construction it is aimed principally to place a sturdy motor of appropriate speed for the develoment of great power. . . .''

" 'In the case first considered, when the motor and the load are in the same vehicle, there actually does not exist traction power properly called for putting the load in motion, but the motor power is employed in comunicating to the wheels of the vehicle a rotary movement that determines its advance, due to the reciprocal gear between the inequalities of the wheel and that of the road or of the ground, that is to say, that the advance is effectuated by adherence. The movement of the wheels is transmitted to all parts of the vehicle to which they are invariably united. If the adherence is insufficient, the wheels do not advance; only revolve around their axle, and, as is commonly said, they slip and the vehicle does not move.

" 'There does not exist, then, in this case a traction power transmitted by means of some rigid or flexible organ to the load in order to put it in motion; the locomotion or change of position obeys a combination of forces of different natures. Nevertheless, as these automotor carriages also are employed for the hauling or drawing of other vehicles, in which case there intervenes a peculiar traction force, we will study at this place its application to transportation, indicating at the same time the evolution suffered by the general system, until we arrive at the most current types used at the present time.'

"We have believed it adequate to insert these paragraphs because the plaintiff lays stress on the fact that the apparatus in this case does not have traction bars, hooks or towing piece, thus indicating that the plows that are carried form a unit with it, thus carrying at the same time and within itself the active element, constituted by the motor; the inactive, formed by the load and all the intermediate elements such as transmission and accessories. There is no doubt that said argument offers well grounded motives for observing a difference between this class of apparatus and those that receive the name of tractors. Yet, if it is true that the plows and other tools are attached

to the principal body, the power of the motor is not employed only, as in the cases of the trucks and other automotors that together with the load form a unit, in communicating to the wheels of the carriage a rotary movement that determines the advance of the same due to the reciprocal gear between the inequality of the wheel and that of the ground, but to the contrary traction power similar to that of the automotor called tractor is effected, that is, although forming part of the main body, two plows of common type and a mechanism that the plaintiff calls 'cylindrical discs' are hauled by said apparatus. The advance then, of the vehicle, as in the case of tractors, does not depend only on the adherence of the wheel to the ground by reason of the weight of the body or mass of the apparatus, but there exists also, in spite of all being one unit, the hauling or traction power, that necessarily increases the adherence as if the plows were connected to the apparatus by a coupling bar. In other words, this is an apparatus very similar to the tractor that as a separate body hauls the plow, only that here the object that is hauled is not hooked to the automotor. In regard to what the plaintiff says of the enormous weight of the apparatus, in the same work and page that we previously cited, it is said:

" 'That the primordial conditions that a tractor vehicle ought to satisfy, are: great weight and a very powerful motor.'

"As may be seen, the great weight is not a fact that distinguishes the apparatus under consideration from that commonly called a tractor.

"Neither is it a reason for distinguishing the said apparatus from the tractor the fact that it be called an agriculural implement, because although this is so, we understand that a tractor is for the same reason an agricultural implement."

"Nevertheless, as tractors are understood to be those automotors which only carry the motor and that draw or pull objects that are separated from them and that are connected to them by a traction or hauling bar, and as it appears from all the facts alleged by the plaintiff taken together that a tractor is something different from the apparatus which is the object of this claim, although resembling it very much, we believe we are justified in resolving this aspect of the controversy in favor of the plaintiff."

"The court believes it opportune, notwithstanding, to express that, taking into consideration paragraph 8 of Section 16 of the Internal Revenue Law as amended by Act No. 83 of 1931, the apparatus described, if not a tractor as we have decided that it is not under the allegations of the complaint, is however a 'motor vehicle' and falls

necessarily within the sections covered by the law; this point being consequently the one of greater importance. It is true that if in the above considerations we have sustained that the apparatus which is the object of this litigation is different from those commonly known by the name of tractors, it is not possible to state now that said apparatus is among those expressly enumerated and specifically mentioned in the law.

"But it is also certain that said apparatus differs little from that which is understood by 'tractor', and the latter being included in the Internal Revenue Law as a 'motor vehicle', we are forced to conclude that said apparatus is also a 'motor vehicle,' unless it be maintaned that what gives the character of a motor vehicle to a tractor is the fact of not having attached to the latter the plows or hauled objects forming one unit, and that the fact that the apparatus under our consideration travels more or less slower than the tractors, or have a heavier weight, or carry cylindrical discs with it and plows as part of its main body, take away from it the qualities that it ought to have in order to be included within the significance and scope of the expression 'motor vehicle' as the latter is used in the provisions contained in paragraph 8 of Section 16 of the law above cited.

"Consequently, we are of the opinion that the complaint describe an apparatus upon which the Internal Revenue Law levies a tax."

In the preceding opinion it is said that the apparatus described in the complaint is not a tractor because it lacks traction bars, hooks or hauling devices, the cylindrical discs and plows that are hauled being attached to the principal body of the apparatus. The lower court discusses in a fine-drawn manner the difference between this apparatus and a tractor, making it clear nevertheless that "if it is true that the plows and the other implements are attached to the principal body, the power of the motor is not employed only as in the cases of trucks and automotors that form one unit with the load in, giving to the wheels of the vehicle a rotary movement that determines the advance of the same thanks to the reciprocal gear between the inequalities of the wheel and that of the ground, *but to the contrary the motor also exercises a traction power similar to that of the automotor called tractor, that is, although forming part of the*

*main body, two plows of the common type are hauled by the apparatus as well as the mechanism that the plaintiff calls "cylindrical discs".*

The court goes on saying: "that the advance of the vehicle equal to that in the cases of tractors, does not depend only on the relationship of the wheel to the ground by reason of the weight of the body or the mass of the apparatus but that there exists also in spite of it being one unit, the hauling or traction work that necessarily increases the relationship as much as if the plows were connected to the apparatus by a coupling bar. This apparatus is very similar to the tractor which as a separate body hauls the plow, although here the object which is hauled is not coupled to the automotor."

It clearly seems that in the judgment of the lower court the only difference existing between this apparatus that the parties call "Gyrotiller" and a tractor, is that in the first the bodies that are hauled, that is to say, the cylindrical discs and the two common type plows are attached instead of being coupled to the apparatus.

The appellee alleges that in accordance with the facts averred in the complaint the apparatus mentioned is nothing but a very large tractor, caterpillar system, Gyrotiller make, differing from the common tractor in that it includes in its structure the complete equipment of plows for the preparation of the land devoted to the planting of sugar cane. Defendant argues that, taking off from it this equipment, there is left a common tractor or hauling auto, and that it is natural that it does not have a traction bar, hooks or hauling apparatus, because the equipment for plowing, that is, the cylindrical discs or the plows are screwed to the apparatus, all this not preventing, however, other objects or things being attached to it as is done in England where the Gyrotiller is used for preparing the ground devoted to wheat which demands a system of discs which has to be and is different.

This is a question that has been exhaustively argued by counsel on both sides and by the judicious opinion of the court rendering the judgment. We are inclined to believe that the apparatus which is described in the complaint can be considered as a tractor falling within the disposition of the Internal Revenue Law applied by the Treasurer of Puerto Rico for the collection of the tax. The ''Diccionario de la Real Academia Española'' tells us that *tractor* is a machine that produces traction; and *traction* according to the same dictionary, is the action and effect of pulling something in order to move it or to haul it. In accordance with the Encyclopedia Britannica, ''traction'' (from the Latin *trahere,* ''to draw'') is the act of drawing or hauling.

It appears to us that the Gyrotiller or apparatus which is the basis of this action can be very well placed within the foregoing definitions.

In accordance with the allegations of the complaint, this Gyrotiller has been manufatured for use in the preparation and plowing of the earth. This is admitted by the appellee, arguing that this fact does not take away from it its character of a tractor, as the same hauls the two sets of rotary knives that are used to break up the ground and the supplementary implements. The rotary knives, the common plows and other implements of a different nature that are necessary to carry on the preparation of the soil, are hauled by the machine, for which the latter has to develop traction power so as to move said implements using for this part of the power that the motor develops.

■■ The appellant alleges that for the purposes of the United States customs the apparatus in question is classified as an agricultural implement. This is sustained in the case of *Richardson Co.* v. *United States* (1917), 8 Ct. Cust. App. 179, from which syllabus we extract the following:

''The court may take judicial notice of advancement in methods of agricultural pursuits. It judicially knows that slow-traveling, heavy-duty tractors are everywhere to a great degree supplantig the

horse as motive power on the farm, and that these machines are so constructed that they travel too slowly and are too heavy for hauling on the modern roadway, their construction fitting them only for slow travel and field work on a more yielding surface.

"The fact that farm tractors are incidentally or exceptionally used for other than agricultural purposes is not sufficient to deny them classification as agricultural implements.

"The known general use of farm tractors demonstrates them commercially and practically necessary to agriculture; and such, when chiefly used for agricultural purposes, are entitled to clasification as 'agricultural implements', under paragraph 391, tariff act of 1913."

It is to be noted that in the preceding opinion certain apparatuses utilized for agricultural purposes are called tractors and it is said that these apparatuses constitute agricultural implements in accordance with the Customs Law. Nevertheless, the fact that the above referred to apparatuses called tractors may have been classified as agricultural implements would not exempt them, if they were introduced into Puerto Rico, from the tax imposed by paragraph 8 of Section 16 of the Internal Revenue Law of Puerto Rico, as amended by Act No. 83 of 1931.

In the case of *Colón v. Domenech,* 48 P.R.R. 831, it was alleged that agriculture ought to be protected and that the law refers to industrial tractors and not to those devoted to agricultural work that are used for hauling the heavy modern plows and other agricultural apparatuses. In answer to this allegation this court said:

"Notwithstanding this, the law has imposed a tax on the tractors without distinguishing between industrial and agricultural tractors, as the appellant does. By the provisions of the law all the tractors have to pay taxes and we are not authorized to add to the law words and exceptions that it does not contain. The latter is a function of the Legislature, which can exempt from the tax the tractors that the appellant calls agricultural, if it deems it proper."

Taking into consideration the conclusions at which we have arrived in this case, considering as tractors the apparatuses object of this litigation, it is unnecessary to discuss

the error which is assigned to the lower court in concluding that the said appliances are motor vehicles. In accordance with the Internal Revenue Law the expression "motor vehicles" also includes tractors.

In regard to the holding as to costs we are inclined to accept the judgment of the lower court entered in the use of its discretion.

The judgment appealed from must be affirmed.